## LOCATION OF PESTHOUSES.

[Circuit Court of Lorain County.]

CITY OF LORAIN ET AL V. JOSEPHINE ROLLING ET AL.

Decided, October 12, 1902.

*Pesthouses—Location of Outside of Municipal Territority—Consent by Township Authorities not Necessary—Sections 2142 and 2169.*

The location of a pesthouse does not create a nuisance *per se,* and the site may be selected outside the corporate limits, without first obtaining the consent of the authorities of the township.

CALDWELL, J.; HALE, J., and MARVIN, J., concur.

Heard on error.

The city of Lorain bought outside the city limits twelve acres of land and was about to erect on it a structure called a pesthouse, when this action was brought to restrain the erection thereof on this piece of land by the defendants in error, Josephine Rolling and others, who have property adjoining, or at least across the road from the property in question.

In the trial of the case it was contended that before grounds could be obtained for a pesthouse outside of the limits of the corporation establishing the pesthouse, that permission must be had from the trustees of the township where it was to be established, if outside of the corporation establishing it, and that this consent was not obtained, and, that being true, the city of Lorain was proceeding unlawfully, and that it was proper and right to restrain its unlawful action.

On the other side, the city of Lorain contended in establishing a pesthouse that it was not acting under the law for establishing a place for sanitary plants; but the two were entirely separate and distinct, and in procuring the grounds and establishing a pesthouse the consent of the municipality or public authorities where it was established, if outside of the city or village, was entirely unnecessary, and, hence, the law pertaining to sanitary plants did not apply. The court below held the law pertaining to sanitary plants did apply.

Now the plaintiffs below, in presenting their case, made this legal point that I have spoken of, as to which law applies, and then offered no evidence as to whether or not this was a nuisance. They undertook to offer some evidence that it would reduce the value of property in that neighborhood, but the only witness called was unable to say, hence no evidence was obtained upon that point.

Then the defendant proceeded to show that establishing this pesthouse would not render that neighborhood unhealthy or liable to contract contagious diseases from parties who were placed in the pesthouse, and the testimony, so far as the defendant below was concerned, was quite conclusive upon that point. But the court below rendered judgment against the city of Lorain and in favor of the plaintiffs below, and the city of Lorain files the petition in error to reverse that judgment in this court.

There is only one question we are concerned with, and yet we may discuss two, as it will lead to the right conclusion, we think, in this case.

What statute applies? It is contended that Section 1692, Revised Statutes, subdivision 23 or paragraph 23, giving general powers to municipalities, bestows upon Lorain the authority to establish a pesthouse, and it does in direct terms give that authority. Then Section 2169, Revised Statutes, states where and how that pesthouse may be established, and that puts no restrictions upon the village, so far as obtaining the consent of other municipalities or other authorities if the pesthouse is built outside of the city, and that has been the law for a long time. Then Section 2142, Revised Statutes, with which the court below held that the city must comply in obtaining the consent of the authorities where the grounds were established outside the city, the court held to apply in this case. Section 2169, Revised Statutes, applies to pesthouses; there is no question about that. The court below held that Section 2142, Revised Statutes, also applied. Section 2142, Revised Statutes, is found in 94 O. L., 342, and also again on page 383; but there is no difference in the two; they both amend Section 2142, Re-

vised Statutes.   There is no difference so far in the sections we
desire to consider; they are precisely the same.   Section 2142,
Revised Statutes, pertains to quarantine grounds controlled by
the city.

"Any city, village, hamlet or township may establish a quar-
antine ground or grounds within or without its own limits, but
if such place be without its limits, the consent of the municipal-
ity or township within which it is proposed to establish it shall
be first obtained; and the board of health within the city, vil-
lage, hamlet or township having quarantine grounds or dump
grounds, shall have exclusive control of the same."

If this pertains to quarantine grounds, then it is clear that
the consent of the township where it is established must be ob-
tained—obtained perhaps through the trustees, but it does not
state exactly how; but the trustees are the representatives of the
township and might give consent; the law probably implies that.
But that is not necessary to the consideration of this case, but
after consent is thus obtained and the grounds are established,
then the corporation establishing them has control.

The title to the act as found in the session laws is, "To amend
Section 2142, Revised Statutes of Ohio, providing for the con-
trol of quarantine grounds and relating to the power of boards
of health, enabling municipalities to erect and maintain sani-
tary plants."   That is, the purpose of the act is, to enable a
corporation or municipality to acquire quarantine grounds first,
and then in addition to that to erect thereon a sanitary plant.

The object of a sanitary plant is clearly defined in the act,
as is found in the act itself, and also in the general statutes.
Section 2142a, Revised Statutes, definition of sanitary plant:
"The expression 'sanitary plant,' as herein used, shall be held
to mean a structure with the necessary land and all the neces-
sary fixtures and appliances and appurtenances required for
the treatment and purification and disposal, in a sanitary man-
ner, of either or both the liquid or solid wastes of the munici-
pality."   So the act provides for obtaining quarantine grounds
and for building a sanitary plant thereon, and then the grounds
and the structure together are to be known as the sanitary
plant.

Well, after obtaining the ground, the act provides that buildings may be erected, and machinery, appliances and appurtenances acquired, necessary for the disposal, in a sanitary and economic manner, of the sewage and garbage, night soil, dead animals, offal, spoiled meats and fish or any putrid substance, or any liquid or solid wastes, or any substances injurious to health of the municipality. This, then, seems to be a plant simply for taking everything that is full of microbes and deadly poisons and injurious to health, and by some sort of machinery purifying it and making it healthy. That is all it is— destroying the poisonous gases and poisoned substances in these refuse matters of all kinds. It has nothing to do whatever with a pesthouse, and the court erred in holding that this assent must be obtained of the township where it was built.

Now certain evidence was taken, and as this case will have to be remanded, perhaps it is well enough to discuss it very briefly. This pesthouse is erected by authority of law, and certain restrictions and provisions are made in regard to the manner of establishing, erecting and using it. Therefore, the mere erecting of a pesthouse can not be an unlawful thing. The mere erecting not being unlawful, it can not be a nuisance *per se.*

But if a method is pursued that will necessarily make it dangerous beyond that already contemplated by the law, then it may be a nuisance, and before actual using might be condemned by the authorities and they be enjoined from establishing it. But if the mode prescribed and manner contemplated has been pursued, or if no mode or manner is definitely pointed out by the law, if that generally approved is pursued, then there can be no injunction and no declaring it a nuisance until it is wrongfully used. If it is so negligently used, so carelessly used and so used contrary to the intent of the law, it may become a nuisance, and it may be then enjoined. And that is the whole law of the case as I understand it. Of course, I am not committing the court on what I say now, and the case must be reversed and remanded for a new trial.

*E. G. Johnson* and *W. L. Hughes,* for plaintiffs in error.

*Metcalf & Cinniger,* for defendants in error.